IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES I. PRATER, et al.,
    Plaintiffs,

v.

OHIO EDUCATION ASSOCIATION,
    Defendant.

Case No. 2:04-CV-1077
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of several motions. For the reasons that follow, the Defendant's motions for summary judgment are granted. The Plaintiff's motions for oral argument, for class certification, and for leave to file an amended complaint are denied. The Defendant's motions to compel compliance with subpoena and for leave to file a surreply *instanter* are also denied.

### I.

Plaintiffs James Prater, Harold Thorley, Joan Montgomery, Betty Whaley, and Jeffrey Westfall ["Plaintiffs"], bring this action against their former employer, the Ohio Education Association ["OEA"], claiming an alleged violation of § 301 of the Labor Management Relations Act ["LMRA"], 29 U.S.C. § 185(a). The action is brought as a purported class action and there

is a pending motion for class certification (Doc. #15). The Defendant seeks summary judgment[1] on the Plaintiffs' claims. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

Defendant OEA is a professional association that represents teachers and other employees who work at schools, colleges, and universities throughout the State of Ohio. OEA employs hundreds of individuals in various capacities to fulfill the purpose of the association. (*Complaint* at ¶ 5). Plaintiffs are retired employees of OEA. (*Id.* at ¶ 1). In March 2004, Defendant OEA notified Plaintiffs that it would cease providing certain health benefits to retirees who had reached age 65. (*Id.* at ¶ 4). Plaintiffs bring this action claiming that the decision of OEA to terminate benefits constitutes a violation of § 301 of the LMRA.

During their employment with OEA, Plaintiffs were represented by one of two labor unions, the Professional Staff Union ["PSU"] or the Ohio Associate Staff Union ["OASU"], for purposes of collective bargaining with OEA. (*Id.* at ¶ 2). PSU is the sole and exclusive labor organization that represents the professional staff employees of OEA and OASU is the sole and exclusive labor organization that represents the associate staff employees of OEA. Plaintiffs retired under various collective bargaining agreements ["CBAs"] and received summary plan descriptions ["SPDs"] that contained more detailed explanations about their health benefits.

Plaintiffs James Prater and Harold Thorley are retired members of the PSU. (*Id.* at ¶¶ 6, 7). Thorley and Prater are over the age of sixty-five and retired from OEA in 1984 and 1989, respectively. They retired under different CBAs, although with identical terms describing their post-retirement health benefits:

---

[1] The Plaintiffs have filed a Motion requesting Oral Argument on the Summary Judgment motions. The Court finds that oral argument is not warranted. S.D. Ohio Local Rule 7.1(b)(2). Thus, the Plaintiffs' motion (Doc. #57) is denied.

> 11.014 <u>Retired Employees</u>.
>
> 11.0141 <u>Continuation of Benefits</u>. The Association shall continue to provide all benefits provided by Sections 11.0112 [Comprehensive Hospitalization and Surgical and Major Medical] and 11.0113 [Prescription Drug] of this contract for each retired employee to age sixty-five (65).
>
> 11.0142 <u>Reimbursement for Cost of Medicare</u>. The Association shall reimburse each retired employee over age sixty-five (65) for the cost of Medicare Part B.
>
> 11.0143 <u>Supplement to Medicare</u>. The Association shall supplement the benefits of Medicare Parts A and B to provide benefits at a level equal to those benefits provided by Sections 11.0112 and 11.0113 of this Contract for each retired employee to age sixty-five (65).

(Exhibit D13 at 58; Exhibit D14 at 68.) In addition to the language of the CBAs, the SPDs which Plaintiffs Prater and Thorley received contain the following clause: "The Plan Administrator may change or eliminate benefits under the plan and may terminate the entire plan or any portion of it." (Exhibit D30 at 67; Exhibit D32 at 33.)

Plaintiff Westfall retired from OEA in 1994 and is a retired member of the PSU. (*Complaint* at ¶ 10). Mr. Westfall is over the age of 65, and the terms of the CBA under which he retired state:

> Section 11.01J. <u>Retired Employees</u>
>
> 1. <u>Continuation of Benefits</u>
>
> The Association shall continue to provide all benefits provided by Sections 11.01B. [Comprehensive Hospitalization and Surgical and Major Medical] and 11.01C. [Prescription Drug] of this Contract for each retired employee to age sixty-five (65). Upon employment or the effective date of this agreement, whichever is first, the Association shall enter into an individual contract with each

3

> employee or retired employee or his/her survivors currently
> covered guaranteeing the above benefit.
>
> 2. <u>Reimbursement for Cost of Medicare</u>
>
> The Association shall reimburse each retired employee over age
> sixty-five (65) for the cost of Medicare Part B or its replacement.
>
> 3. <u>Supplement to Medicare</u>
>
> The Association shall supplement the benefits of Medicare Parts A
> and B to provide benefits at a level equal to those benefits provided
> by Sections 11.01B. and 11.01C. of this Contract for each retired
> employee to age sixty-five (65).

(Exhibit D16 at 59-60.) Although the language of Mr. Westfall's CBA varies slightly from the language of Plaintiffs Prater's and Thorley's CBAs, the SPD which Plaintiff Westfall received also contains a reservation of rights clause with language identical to that in Plaintiffs Prater's and Thorley's SPDs. (*Cf.* Exhibit D30 at 67 (Thorley's SPD); Exhibit D32 at 33 (Prater's SPD); Exhibit D33 at 63 (Westfall's SPD.))

Plaintiffs Montgomery and Whaley were represented by OASU in the collective bargaining process with OEA. Both Plaintiffs Montgomery and Whaley retired under a CBA that was in effect from September 1, 1997 through August 31, 2000, and states that retired employees are to receive continued health coverage as follows:

> 17.0100 <u>Health Insurance</u>
>
> 17.0101 <u>Types of Coverage</u>
>
> Subject to the deductibles, the Association shall provide all
> employees and their families the following insurance coverage at
> full cost to the Association: hospitalization; surgical; major-
> medical; out-patient X-ray; EKG; laboratory; prescription drug;
> dental; and optical.

4

> 17.0509 <u>Association Paid Benefits</u>
>
> Retired employees (present and future) and their families shall be included in the Association group in regard to: surgical; out-patient; and major-medical coverage. After the retiree reaches age 65, the Association is required to provide only major-medical coverage.

(Exhibit D8, App. Vol. I.) Both Plaintiffs received identical SPDs with the following explanation:

> Retired employees may continue coverage, in accordance with the collective bargaining agreement, for employee and/or dependent coverage. While the employer expects retiree coverage to continue, the employer reserves the right to modify or discontinue retiree coverage at any time.

(Exhibit D28 at 33.)

In their Complaint, Plaintiffs allege that OEA's decision to terminate Medicare supplemental health and prescription drug coverage to retirees at age 65 constitutes a breach of the Plaintiffs' respective CBAs. (*Complaint* at ¶ 24). The Defendant has filed two motions for summary judgment on the Plaintiffs' LMRA claims. The Court considers these motions prior to addressing Plaintiffs' request for class certification. The Court notes that while the motions for summary judgment have been pending, Plaintiffs filed a motion for leave to amend their complaint. The Court addresses the merits of the motion, *infra*.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

5

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-159 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronics Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby*, *Celotex*, and *Matshushita* have effected "a decided change in summary judgment practice," ushering in a new era in summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The Court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence to overcome the summary judgment motion. *Id.* It is not

6

sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts." *Id.* (*quoting Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

#### A. Defendant's Motions for Summary Judgment

Defendant OEA's first motion for summary judgment pertains to the claims of Plaintiffs Prater, Thorley and Westfall. The second motion addresses the claims of Plaintiffs Whaley and Montgomery. In moving for summary judgment against all Plaintiffs, Defendant first argues Plaintiffs have no vested right to lifetime health benefits because, in the respective SPDs, OEA expressly reserved the right to modify or terminate retiree health coverage. Defendants further argue that the plain language of CBAs excludes the coverage to which Plaintiffs claim they are entitled.

Section 301(a) of the LMRA provides federal jurisdiction over claims alleging breach of a CBA. 29 U.S.C. § 185(a)[2]; *see Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1293 (6th Cir.

---

[2]The statute provides:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

7

1991). Although a retiree health care benefit plan constitutes a welfare benefit plan under the Employee Retirement Income Security Act of 1974 ["ERISA"], 29 U.S.C. § 1001, *et seq.*, unlike pension benefit plans, retiree health care benefit plans are not subject to mandatory vesting requirements. "If the parties intended to vest benefits and the agreement establishing this is breached, there is an ERISA violation as well as a LMRA violation." *Maurer v. Joy Technologies*, 212 F.3d 907, 914 (6th Cir. 2000), citing *Armistead*, 944 F.2d at 1298.

In this case, Defendants move for summary judgment on the LMRA claim on the basis that Plaintiffs have no vested rights to lifetime health benefits. Plaintiffs contend that the CBAs at issue are ambiguous, giving rise to factual issues as to the extent of benefits available. The Defendants maintain that the CBAs are clear and that the SPDs specifically reserve the right to terminate or modify the extent of coverage available.

The CBAs are contracts and, as a result, the Court applies general principles of contract law to determine the intent of the parties as to whether retiree benefits sought in this case are vested. *International Union UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479-80 (6th Cir. 1983); *Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 605 (6th Cir. 1999). *Yard-Man* is the central case in the Sixth Circuit on the issue of interpretation of CBAs.

> Many of the basic principles of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements. For example, the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties. As in all contracts, the collective bargaining agreement's

---

29 U.S.C. § 185(a).

8

> terms must be construed so as to render none nugatory and avoid illusory promises. Where ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for guidance. Variations in language used in other durational provisions may, for example, provide inferences of intent useful in clarifying a provision whose intended duration is ambiguous. Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy. This is not to say that the collective bargaining agreement should be construed to affirmatively promote any particular policy but rather that the interpretation rendered not denigrate or contradict basic principles of federal labor law.

*Yard-Man*, 716 F.2d at 1479-80 (citations omitted).

With these principles in mind, the Court considers whether Plaintiffs have a vested right to health care coverage.

### 1. **Plaintiffs Prater and Thorley**

The CBA for Plaintiffs Prater and Thorley provides as follows with respect to health insurance coverage for retired employees:

> 11.014 Retired Employees.
>
> 11.0141 Continuation of Benefits. The Association shall continue to provide all benefits provided by Sections 11.0112 [Comprehensive Hospitalization and Surgical and Major Medical] and 11.0113 [Prescription Drug] of this contract for each retired employee to age sixty-five (65).
>
> 11.0142 Reimbursement for Cost of Medicare. The Association shall reimburse each retired employee over age sixty-five (65) for the cost of Medicare Part B.
>
> 11.0143 Supplement to Medicare. The Association shall supplement the benefits of Medicare Parts A and B to provide benefits at a level equal to those benefits provided by Sections 11.0112 and 11.0113 of this Contract for each retired employee to age sixty-five (65).

(Exhibit D13 at 58; Exhibit D14 at 68.)

2. **Plaintiff Westfall**

The CBA for Plaintiff Westfall provides as follows with respect to health insurance coverage for retired employees:

> Section 11.01J. Retired Employees
>
> 1. Continuation of Benefits
> The Association shall continue to provide all benefits provided by Sections 11.01B. [Comprehensive Hospitalization and Surgical and Major Medical] and 11.01C. [Prescription Drug] of this Contract for each retired employee to age sixty-five (65). Upon employment or the effective date of this agreement, whichever is first, the Association shall enter into an individual contract with each employee or retired employee or his/her survivors currently covered guaranteeing the above benefit.
>
> 2. Reimbursement for Cost of Medicare
> The Association shall reimburse each retired employee over age sixty-five (65) for the cost of Medicare Part B or its replacement.
>
> 3. Supplement to Medicare
> The Association shall supplement the benefits of Medicare Parts A and B to provide benefits at a level equal to those benefits provided by Sections 11.01B. and 11.01C. of this Contract for each retired employee to age sixty-five (65).

(Exhibit D16 at 59-60.)

3. **Plaintiffs Montgomery and Whaley**

The CBA for Plaintiffs Montgomery and Whaley provides as follows with respect to health insurance coverage for retired employees:

> 17.0100 Health Insurance
> 17.0101 Types of Coverage
> Subject to the deductibles, the Association shall provide all employees and their families the following insurance coverage at full cost to the Association: hospitalization; surgical; major-medical; out-patient X-ray; EKG; laboratory;

10

prescription drug; dental; and optical.

17.0509 <u>Association Paid Benefits</u>
Retired employees (present and future) and their families shall be included in the Association group in regard to: surgical; out-patient; and major-medical coverage. After the retiree reaches age 65, the Association is required to provide only major-medical coverage.

(Exhibit D8, App. Vol. I.)

Plaintiffs Prater, Thorley and Westfall argue that the provisions for health coverage are ambiguous. In particular, Plaintiffs contend that use of the words "to age 65" is not a limitation on coverage but rather, a description of the level of coverage available when a retired employee reaches age 65. (*Memorandum contra* at 5, 8). Plaintiffs argue that this ambiguous language creates a genuine issue of material fact as to whether Plaintiffs a vested right to benefits.

As to Plaintiffs Prater and Thorley, in considering section 11.014 as a whole, the Court finds that "to age 65" is intended as a limitation on coverage. Section 11.0142 clearly provides reimbursement of the cost of Medicare Part B for retired employees "over age 65." Thus, if Defendant intended coverage in sections 11.0141 and 11.0143 to exceed the age of 65, then the word "over" rather than "to" would have been used. Similarly, with respect to Plaintiff Westfall, in reading section 11.01J in its entirety, the use of "to age 65" in sections 1 and 3 and the use of "over age 65" in section 2 indicates a limitation on coverage available and is not at all ambiguous. Plaintiffs' interpretation of the word "to" belies the plain meaning of the word. In considering the entire context of the provisions, and applying basic principles of contract law, the

11

Court finds no ambiguity in the coverage provisions that would justify the introduction of extrinsic evidence. As to Plaintiffs Montgomery and Whaley, the provision for health insurance coverage clearly indicates the types of coverage available, subject to deductibles, in section 17.0101. Section 17.0509 clearly states that "[a]fter the retiree reaches age 65, the Association is required to provide only major-medical coverage." (Exhibit D8). The limitation on coverage could not be more clear or unambiguous.

Nevertheless, all Plaintiffs argue that Defendant cannot change or eliminate the extent of coverage by relying on the reservation of rights provision found in the SPDs. The SPDs provided to Plaintiffs Prater, Thorley and Westfall state: "The Plan Administrator may change or eliminate benefits under the plan and may terminate the entire plan or any portion of it." (Exhibit D30 at 67; Exhibit D32 at 33; D33 at 63). The SPDs for Plaintiffs Montgomery and Whaley state:

> Retired employees may continue coverage, in accordance with the collective bargaining agreement, for employee and/or dependent coverage. While the employer expects retiree coverage to continue, the employer reserves the right to modify or discontinue retiree coverage at any time.

(Exhibit D28 at 33.)

According to Defendant, these are unqualified reservation of rights provisions that allow the Defendant to alter or eliminate health coverage and evidence that there was no intent to vest retiree health care benefits. Defendant further argues that the clear language of these provisions should have prompted the union to protest the same, which was not done in this case. Defendant relies on the Sixth Circuit case of *Maurer v. Joy Technologies*, 212 F.3d 907 (6th Cir. 2000) in support of its position.

12

In *Maurer*, the Court considered the claims of a class of retirees formerly employed by Defendant Joy Technologies, Inc. that they were entitled to lifetime health benefits under various CBAs negotiated every three years, beginning in 1974. In August 1991, a handbook was distributed to retirees containing the following provision:

> **Amendments**. Joy reserves the right to amend or terminate any of the plans. The right to amend includes the right to curtail or eliminate coverage for any treatment, procedure, or service regardless of whether you are receiving treatment for an injury, illness, or disease contracted prior to the effective date of the amendment.

*Id.* at 913. Defendant Joy also sent a supplement to retirees in 1991, which included the following:

> **Plan Changes**. This insert summarizes your current retiree health care coverage. However, since no one can predict the future, Joy reserves the right to make changes or terminate these Plans.

*Id.* In March 1993, Defendant Joy announced a cost-sharing plan for retirees which would replace the previous extent of health coverage outlined in the various CBAs. The district court found that benefits for those who retired prior to August 1991 were vested[3] but those who retired after did not have vested benefits in view of Defendant's reservation of rights, pursuant to the handbook and supplement issued in August 1991. The Sixth Circuit affirmed this decision.

> The district court correctly found that the reservation of rights language in the August 19, 1991, booklet insert was effective against the retirees because "[w]hile plaintiff argues that a bilateral agreement is not subject to unilateral modification, the Union was obligated to grieve or enter suit over the reservation of rights clause as the clause was conspicuously contained in the 1991 insert and plaintiffs did not dispute it until the filing of this lawsuit in 1994." The August 19, 1991 reservation of rights clearly included retirees and was distributed to them.

---

[3]Those who retired prior to 1991 held vested benefits because the Defendant did not set forth any reservation of rights as it did when it issued the handbook and supplement to the CBA in August 1991.

13

> Therefore, those plaintiffs retiring after August 19, 1991, do not hold vested retirement benefits.

*Id.* at 919. Defendant OEA argues that, like *Maurer*, the reservation of rights clauses contained in the various SPDs in this case are clear and indicate an intent not to vest retiree health benefits. Plaintiffs disagree, relying on a later case of the Sixth Circuit, *McCoy v. Meridian Auto. Sys., Inc.*, 390 F.3d 417 (6th Cir. 2004).

In *McCoy*, the Defendant challenged the district court's grant of a preliminary injunction restraining the termination of medical benefits for a class of retirees of an automotive-parts plant. There were several agreements outlining the extent of medical benefits for retirees, all of whom retired after August 1, 1994. The SPDs, distributed on October 1, 1992 and August 1, 1994, stated that Defendant would "'continue to provide medical, prescription drug and hearing aid coverage to all Employees who retire as determined by the Employer, under the normal retirement, early retirement or disability provisions'" but, the SPDs further stated that "'[i]f the Group Benefits Plan were discontinued, all coverages would then cancel.'" *Id.* at 420 (citation omitted). In a section indicating that the plan complied with ERISA, the SPDs set forth the following "Plan Continuance" statement:

> The Plan may be amended at any time and in any manner by [Rockwell/Cambridge]. While [Rockwell/Cambridge] intends to continue the plan indefinitely, it reserves the right to terminate all or part of the Plan at any time, and cancel all or part of the coverages and benefits under the Plan. Any such action would be taken only after careful consideration and subject to the provisions of the applicable collective bargaining agreement.

*Id.* at 421 (citation omitted).

The Sixth Circuit found that this reservation of rights was not unqualified, as was the case in *Maurer*, because it tied eligibility for retirement health benefits to the pension benefit. Thus,

14

the court affirmed the district court's grant of a preliminary injunction to prevent the termination of health benefits. In comparing the reservation of rights language in *Maurer* and *McCoy*, the Sixth Circuit held:

> The SPDs in this case [*McCoy*] do not provide the same reservation of rights - - whether as a matter of specificity or the assertion of a unilateral right. While referring to "all coverages," they do not contain *Maurer's* sweeping authority to retract coverage, even coverage already being provided for an existing illness. Instead, they refer to termination only "upon discontinuance of the Collective Bargaining Agreement," "[i]f the Group Benefits Plan were discontinued" or "subject to the provisions of any applicable collective bargaining agreement." Not once do the SPDs establish a termination right without reference to the collective bargaining agreement and the limitations on that right included in the agreement. Under these circumstances, union leaders - - who apparently believed, as we do, that the collective bargaining agreement created vested retirement benefits - - were compelled to protest the SPD language.

*Id.* at 425.

This Court finds the reservation of rights provisions in the SPDs in this case are unlike that in *McCoy*. This provisions in this case is analogous to *Maurer*, not *McCoy*, because they confer an unqualified right on the employer to change or terminate the retiree health benefits. The reservation of rights clause in Plaintiffs Prater's, Thorley's, and Westfall's SPDs states: "The Plan Administrator may change or eliminate benefits under the plan and may terminate the entire plan or any portion of it." (Ex. D30 at 67; Ex. D32 at 33.; D33 at 63.) The reservation of rights clause in Plaintiffs Montgomery's and Whaley's SPDs is almost identical to the reservation of rights language contained in *Maurer:* "While the employer expects retiree coverage to continue, the employer reserves the right to modify or discontinue retiree coverage at any time." (Ex. D28 at 33.) These provisions are unqualified and indicate that the parties to the agreement did not intend to vest the retirees' health benefits.

15

The Court notes Plaintiffs' reliance on a 1997 PSU SPD (Exhibit D38) and a 2000 SPD (Exhibit D42) in which the reservation of rights clause is limited to termination of benefits "in accordance with the provisions of the collective bargaining agreement." As the Defendant points out, none of the Plaintiffs in this case retired while these SPDs were in effect. Thus, Plaintiffs' reliance on these SPDs is misplaced. The Sixth Circuit's decision in *Maurer* makes clear that the provisions in effect at the time of retirement control the issue of whether there was an intent to vest benefits.

There is no dispute that Plaintiffs in this case received the SPDs. As the Sixth Circuit explained in *McCoy*, an unqualified reservation of rights clause "should have prompted the union immediately to protest - - and file a grievance - - if it disagreed with the employer's assertion of authority." *McCoy*, 390 F.3d at 425. The PSU and the OASU were part of the collective bargaining process, had the opportunity to grieve, and yet, the reservation of rights language was included in the SPDs. In light of the clear reservation of rights provisions, the Court finds no evidence of an intent to vest retiree health care benefits in this case. Thus, the Defendant's Motions for Summary Judgment on Plaintiffs' § 301 LMRA claim are meritorious.

## B. Remaining Motions

On April 18, 2005, the Plaintiffs' filed a Motion to Certify a Class in this case. In view of the disposition of Plaintiffs' claims, class certification is not appropriate and the motion is denied. Defendants' Motion for leave to file a surreply *instanter* on the class certification issue is also denied.

On April 25, 2005, the Defendant filed a Motion for a non-party, the Coalition of Retired Employees of the Ohio Education Association, to comply with a subpoena for production of documents. In view of the present case posture, this motion is denied.

Finally, the Court considers Plaintiffs' Motion for Leave to file an Amended Complaint. Plaintiffs seek leave to add a claim under ERISA, which Plaintiffs concede is parallel to the claim under § 301 of the LMRA. The motion for leave to amend was filed on January 13, 2006 (Doc. #56), three months after Defendant filed its motions for summary judgment. In addition, the deadline for amending pleadings, as set forth in the Magistrate Judge's February 28, 2005 Order (Doc. #10) was April 5, 2005.

Fed. R. Civ. P. 15(a) permits a party to amend the complaint after a responsive pleading has been filed only by leave of court. The rule provides that leave is to be "freely granted when justice so requires." In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court stated:

> If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he [or she] ought to be afforded an opportunity to test his [or her] claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc.--the leave sought should be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court .
> . . .

The Sixth Circuit holds that delay alone, unless intended to harass the Defendant, is not a basis upon which to deny a motion for leave to amend. *Dana Corp. v. Blue Cross & Blue Shield Mutual*, 900 F.2d 882, 888 (6th Cir.1990). Rather, significant prejudice must be shown. *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986). In *Duggins v. Steak 'N Shake, Inc.*, 195

17

F.3d 828, 834 (6th Cir.1999), the court found significant prejudice in allowing amendment when the discovery and dispositive motions deadlines had passed and a motion for summary judgment was pending. If, however, the prejudice is able to be remedied in some manner, such as by assessing the moving party the costs of duplicative discovery, amendment may be permitted. *Janikowski v. Bendix Corp.*, 823 F.2d 945, 952 (6th Cir.1987).

In addition to prejudice, futility of the amendment may provide a basis for denial of a motion to amend the complaint. *See Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir.1980). If there is no set of facts under which a valid and sufficient claim could be proven, the amendment may be denied as futile. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir.2001).

In this case, the Motion for Leave to Amend is clearly untimely given the advanced stage at which the motion was filed. Defendant would no doubt suffer significant prejudice if the Court were to permit an amendment of the complaint. The Court notes Plaintiffs' argument that they could not have asserted an ERISA claim until certain discovery was undertaken. The Court disagrees with this position. As stated above, Sixth Circuit law is quite clear in identifying causes of action under both ERISA and the LMRA for the sort of claim raised in this action. Therefore, Plaintiffs could have sought leave to amend much earlier than they did[4]. In light of

---

[4]Defendant also argues that any claim under ERISA would be futile because Plaintiffs did not exhaust certain administrative remedies. Plaintiffs disagree with this argument and assert that exhaustion is not required. The Court declines to delve into the merits of the exhaustion issue on the present record. Thus, the Court expresses no opinion as to the viability of any ERISA claim Plaintiffs may have. The Court simply finds that the delay and prejudice are significant enough to prevent Plaintiffs from asserting an ERISA claim in this action.

Plaintiffs' untimely motion, coupled with the significant prejudice that would result from an amendment of the complaint at this juncture, the motion for leave to amend is denied.

## IV.

In light of the foregoing, the Defendant's Motions for Summary Judgment (**Doc. #40** and **Doc. #41**) are **GRANTED**.

The Plaintiff's Motion for Oral Argument (**Doc. #57**) is **DENIED**. The Plaintiff's Motion for Class Certification (**Doc. #15**) is **DENIED**. The Defendant's Motion to Compel compliance with subpoena (**Doc. #17**) is **DENIED**. The Defendant's Motion for Leave to file a Surreply *instanter* (**Doc. #46**) is **DENIED**. The Plaintiff's Motion for Leave to file an Amended Complaint (**Doc. #56**) is **DENIED**.

The Clerk is **DIRECTED** to enter Judgment in favor of Defendants and to close this case.

**IT IS SO ORDERED.**

9-28-2006
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**