IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES I. PRATER, et al.,

Plaintiffs,

Case No. C2 04 1077

vs.                                                    Judge Edmund A. Sargus, Jr.

Magistrate Judge Norah McCann King

OHIO EDUCATION ASSOCIATION,

Defendants.

OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Motion for Class

Certification. (Doc. # 15.) The Court also considers Plaintiff's Motion to Substitute Party (Doc.

#92) and Motion for Leave to File First Amended Complaint (Doc. #93.) For the reasons that

follow, Plaintiffs' motions are **GRANTED.**

**I.**

In January, 2008, Plaintiffs moved to substitute John Wardell as a plaintiff in place of

Jeffrey Westfall who is now deceased. Plaintiffs also moved for leave to file an Amended

Complaint for the sole purpose of identifying the substituted Plaintiffs. Defendant successfully

moved to stay a decision on those motions in order to take the deposition of Mr. Wardell. That

discovery is now complete, and Defendant has not opposed Plaintiffs' motions. Plaintiffs'

Motion to Substitute Party and Motion for Leave to File First Amended Complaint are hereby

**GRANTED**.

1

**II.**

Plaintiffs James Prater, Harold Thorley, Joan Montgomery, Betty Whaley and John

Wardell are retired employees of the Ohio Education Association ("OEA"). Each Plaintiff was a

member of either the Ohio Associate Staff Union ("OASU") or the Professional Staff Union

("PSU") and each retired under a collective bargaining agreement ("CBA") that extended some

health care benefits and coverage to retirees and their dependents. On March 1, 2004, the OEA

notified retirees that certain benefits previously paid for by OEA would be terminated effective

August 31, 2004. Plaintiffs filed this lawsuit seeking injunctive and declaratory relief, and

damages, to the extent any Plaintiff has suffered monetary losses as a result of OEA's actions.

Plaintiffs seek certification of a class consisting of all similarly situated retired employees of

OEA and the covered spouses and dependents of such OEA retirees.[1]

**III.**

Federal Rule of Civil Procedure 23(a) contains four prerequisites, each of which must be

met before the Court may certify a class. The Rule states:

    (a)    **Prerequisites**. One or more members of a class may sue or be sued as
               representative parties on behalf of all members only if:

           (1)    the class is so numerous that joinder of all members is
                   impracticable;

---

    [1]    OEA disputes that Plaintiffs have adequately described the proposed class to
include spouses and dependents. Plaintiffs' Motion for Class Certification states that the named
Plaintiffs seek to bring claims on behalf of "all similarly situated OEA retirees, spouses and
dependents." (Pls' Mot. at 2.) Although Plaintiffs' formal definition of the proposed class does
not contain spouses and dependents language, the Court is not bound by a proposed class
description. Rather, the Court may "modify the definition of the proposed class to provide the
necessary precision or to correct other deficiencies." Moore's Federal Practice 3d, Sec. 23.21
(2008). It serves the interests of all parties, and of judicial economy, to include all beneficiaries
in the class.

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are
        typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the
        interests of the class.

Fed. R. Civ. P. 23(a).

In addition to demonstrating each of the four prerequisites of Rule 23(a) – numerosity,
commonality, typicality and adequacy – Plaintiffs must show that the class can be maintained
under one of the three subcategories of Federal Rule of Civil Procedure 23(b). *In re American
Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Rule 23(b) requires that one of the
following three conditions must be met: 1) there must be a risk of either incompatible standards
of conduct or a risk that interests of prospective class members would be impaired by an
adjudication of others' claims; 2) the party opposing the class has acted towards members of the
class in a non-uniform way or 3) issues common to the class predominate over issues that are not
common to the class and the best method of trying the suit is a class action." *Eddleman v.
Jefferson County*, 1996 U.S. App. LEXIS 25298 (6th Cir. 1996). Plaintiffs contend that the
criteria of Rule 23(b)(1) and (2) are met.

Plaintiffs bear the burden of demonstrating that the requirements of class certification are
satisfied. *American Medical Sys.*, 75 F.3d at 1086. "The class-action device was designed as 'an
exception to the usual rule that litigation is conducted by and on behalf of the individual named
parties only.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v.
Yamasaki*, 442 U.S. 682, 700-701 (1979)). Therefore, the Court must conduct a "rigorous
analysis" into whether the prerequisites of Rule 23 are met. *Falcon*, 457 U.S. at 161; *Reeb v.

-3-

*Ohio Dept. of Rehab. & Corr.,* 435 F.3d 639 (6th Cir. 2006). The Court has broad discretion in determining whether a particular case may proceed as a class action, but that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981).

## IV.

Plaintiffs seek to be designated as representatives on behalf of a class of approximately 118 OEA retirees plus their spouses and dependents. Plaintiffs assert claims against OEA for breach of the PSU and OASU collective bargaining agreements, and for violations of the Labor Management Relations Act, 29 U.S.C. 185(a).

OEA does not dispute that the proposed class of retirees, with or without dependents, meets the numerosity criterion of Rule 23(a)(1). OEA contends that Plaintiffs have not met the adequacy, typicality, or commonality requirements, and that Plaintiffs' case does not qualify for class action treatment under Rule 23(b)(1) or (2).

## A.     Rule 23(a) Prerequisites: Numerosity, Typicality, Adequacy and Commonality

### *Numerosity*

Class action status is appropriate only when joinder is impracticable, based on the circumstances. Factors to consider include the size of the proposed class, geographic dispersion and financial resources of class members, and judicial economy. *Jackson v. Foley,* 165 F.R.D. 538, 542 (E.D.N.Y. 1994). OEA does not dispute that the proposed class of at least 118 OEA retirees satisfies the numerosity requirement of Rule 23(a)(1). The Court makes this finding explicitly, and based on the particular circumstances of this case, finds that joinder of all class members would be impractical. The proposed class of retirees numbers in excess of 118, and

-4-

includes members who have retired from OEA over the past 30 years and who now live in states other than Ohio. It would be both inconvenient and inefficient to join each class member under the rules of joinder.

*Commonality*

Rule 23(a)(2) requires "common questions of law or fact" as a prerequisite to class certification. Fed. R. Civ. P. 23(a)(2). Commonality does not mean that each class members claims must be identical; rather, commonality is satisfied if "the members of the class have allegedly been affected by a *general* policy of the Defendant and the general policy is the focus of the litigation." *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996) (internal citations omitted; emphasis in original). Because even a single common question of law or fact will satisfy the requirement, commonality has been characterized as a low hurdle to class certification. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc) (one question common to the class will suffice); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (Commonality is "easily surmounted.").

The Court finds that Plaintiffs and the proposed class share at least one common issue, "the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397. Shared facts include: a) employment by the OEA; b) retirement from the OEA since 1978; c) membership in the PSU or OASU; d) retiree health care benefits governed by the terms of a CBA; e) receipt of the March 1, 2004 letter from OEA regarding termination of certain health care benefits. Shared issues of law include whether retired OEA employees had a vested right in certain life-time health-care benefits, and whether OEA had the contractual right to terminate such benefits under the terms of the CBAs and the Summary Plan Descriptions ("SPD") provided to OEA

-5-

employees. *See Prater v. Ohio Ed. Assoc*, 505 F.3d 437 (6th Cir. 2007).

*Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This component of Rule 23 assures that the named representatives' interests align with those of the class. *American Medical Sys., Inc.*, 75 F.3d at 1082. A named plaintiff's claim is considered to be typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* The claims of the named plaintiffs and the absent members must be typical, not identical or homogeneous. *Tucker v. Union Underwear Co., Inc.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992). "Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague*, 133 F.3d at 399). Commonality and typicality are closely related, and typicality is not an onerous requirement. Rather, if there exists a strong similarity of legal theories, factual distinctions between proposed class representatives and class members will not defeat class certification. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884-85 (6th Cir. 1997).

OEA's labor contracts with OASU date back to 1978, and it has contracted with PSUA since 1981. OEA disputes that Plaintiffs satisfy the typicality requirement because the five named Plaintiffs did not retire under each of the nine CBAs between OASU and OEA, or each of the seven CBAs negotiated between OEA and PSU. Each Plaintiff and each putative class member retired under one of sixteen CBAs in effect at different times over the last 30 years. As

-6-

implicitly acknowledged by OEA's March 1, 2004 form letter sent to all retired PSU and OASU member, however, each incarnation of the CBAs contained a contractual obligation to provide some health care benefits or coverage to retirees, their spouses and dependents.

In considering the typicality of the Plaintiffs' claims, the Court will consider the individual factual and legal allegations in order to determine whether their claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [their] claims are based on the same legal theory." *American Medical Sys.*, 75 F.3d at 1082.

Plaintiff James Prater worked for OEA from 1968 until his retirement in 1999. (Prater Decl., Doc. #15-3.) He retired under a CBA between PSU and OEA that provided for Medicare supplemental health and prescription drug coverage to PSU retirees at age 65. Harold Thorley was a PSU member during his employment with OEA from 1962 to 1984. (Thorley Decl., Doc. #15-4.) Under the terms of the collective bargaining agreement between PSU and OEA in effect at his retirement, Thorley received supplemental health benefits and Medicare reimbursement upon turning age 65 in 1992. Joan Montgomery retired from OEA in 1999, and became eligible for supplemental Medicare coverage under the OASU CBA upon turning 65 in February, 2004. (Am. Compl. at 8.) Betty Whaley was also a member of OASU until she retired in August of 2000, at the age of 69. (Whaley Decl., Doc. #15-5.) Plaintiff John Wardell is a retired member of PSU who had not reached age 65 before OEA terminated supplemental benefits to retirees in 2004. (Am. Compl. at 10.) Each Plaintiff alleges that they received benefits or would have been eligible for benefits after the age of 65 under the applicable CBA, until OEA terminated certain supplemental benefits in March, 2004.

-7-

The named Plaintiffs represent four of the sixteen CBAs. Plaintiffs Prater and Thorley

retired under the PSU CBAs in effect from 1984 to1987 and 1987 to1990, respectively. Both

CBAs have an identical provision regarding post-retirement health-care benefits:

11.014 Retired Employees.

11.0141 Continuation of Benefits. The Association shall continue to provide all
benefits provided by Sections 11.0112 [Comprehensive Hospitalization and Surgical and
Major Medical] and 11.0113 [Prescription Drug] of this contract for each retired
employee to age sixty-five (65).

11.0142 Reimbursement for Cost of Medicare. The Association shall reimburse
each retired employee over age sixty-five (65) for the cost of Medicare Part B.

11.0143 Supplement to Medicare. The Association shall supplement the benefits
of Medicare Parts A and B to provide benefits at a level equal to those benefits provided
by Sections 11.0112 and 11.0113 of this Contract for each retired employee to age
sixty-five (65).

(Exhibit D13 at 58; Exhibit D14 at 68.)[2]

The SPDs that Plaintiffs Prater and Thorley received from OEA contain the following

clause: "The Plan Administrator may change or eliminate benefits under the plan and may

terminate the entire plan or any portion of it." (Exhibit D30 at 67; Exhibit D32 at 33.)

Plaintiff Wardell retired under the 1992-1997 PSU CBA, which states:

Section 11.01J. Retired Employees

1. Continuation of Benefits

The Association shall continue to provide all benefits provided by Sections
11.01B. [Comprehensive Hospitalization and Surgical and Major Medical] and 11.01C.
[Prescription Drug] of this Contract for each retired employee to age sixty-five (65).
Upon employment or the effective date of this agreement, whichever is first, the

---

[2] On September 30, 2005 Defendant OEA manually filed an Appendix to its
Memorandum in Opposition to Plaintiffs' Motion for Class Certification, comprised of five
volumes of exhibits, cited herein as "Exhibit D__."

Association shall enter into an individual contract with each employee or retired employee or his/her survivors currently covered guaranteeing the above benefit.

>    2. Reimbursement for Cost of Medicare

The Association shall reimburse each retired employee over age sixty-five (65) for the cost of Medicare Part B or its replacement.

>    3. Supplement to Medicare

The Association shall supplement the benefits of Medicare Parts A and B to provide benefits at a level equal to those benefits provided by Sections 11.01B. and 11.01C. of this Contract for each retired employee to age sixty-five (65).

(Exhibit D16 at 59-60.) The SPD received by Wardell contains a reservation of rights clause

with language identical to that in the SPD received by Prater and Thorley. (Exhibit D33 at 63.)

Plaintiffs Montgomery and Whaley were OASU members who both retired under a CBA

in effect from September 1, 1997 through August 31, 2000. That contract provides continued

health coverage as follows:

>    17.0100 Health Insurance

>    17.0101 Types of Coverage

Subject to the deductibles, the Association shall provide all employees and their families the following insurance coverage at full cost to the Association: hospitalization; surgical; major-medical; out-patient X-ray; EKG; laboratory; prescription drug; dental; and optical.

>    17.0509 Association Paid Benefits

Retired employees (present and future) and their families shall be included in the Association group in regard to: surgical; outpatient; and major-medical coverage. After the retiree reaches age 65, the Association is required to provide only major-medical coverage.

(Exhibit D8.)

These Plaintiffs received identical SPDs with the following explanation: "Retired

employees may continue coverage, in accordance with the collective bargaining agreement, for employee and/or dependent coverage. While the employer expects retiree coverage to continue, the employer reserves the right to modify or discontinue retiree coverage at any time." (Exhibit D28 at 33.)

OEA retirees, including the named Plaintiffs, received a letter from OEA dated March 1, 2004, which stated "**the supplemental coverage in which you are enrolled will terminate on August 31, 2004.**" (Emphasis in original).

PSU members' letter stated:

[F]ormer OEA employees who retired from positions in the PSU bargaining unit are eligible to receive 'comprehensive hospitalization and surgical and major medical' and 'prescription drug' insurance coverage, until the retired employee reached the age of 65. At that point, and upon reaching eligibility for Medicare benefits, former OEA employees who retired from the PSU bargaining united are eligible to receive reimbursement for payment of Medicare Part B Payments.

The letter sent to former OASU members said that retirees were eligible to receive "hospitalization, surgical, outpatient, and major medical coverage" until the age of 65.

OEA identifies factual distinctions between Plaintiffs and prospective class members based on changes in the CBAs and SPDs over the years. It does not deny, however, that the March 1, 2004 letter, and the termination of benefits as of August 31, 2004 as announced therein, applied to all retired OEA employees, regardless of their membership in PSU or OASU or their date of retirement.

The United States Court of Appeals for the Sixth Circuit recently ruled that summary judgment in favor of OEA was not warranted. *See Prater v. Ohio Ed. Assoc*, 505 F.3d 437 (6th Cir. 2007). In doing so, the Court identified issues of law common to retired PSU and OASU

-10-

members. First, in reviewing the claims of OASU members, the Court stated: "at issue with respect to the OASU retirees is whether OEA committed to provide them with lifetime prescription drug benefits." *Id.* at 441. Second, the Court identified "material ambiguities" in the PSU CBAs' provision for post-65 retiree benefits. *Id.* at 442. Third, the SPDs accompanying both PSU and OASU CBAs create ambiguities regarding when and whether the parties intended lifetime health care benefits to vest. *See id.* at 445.

Plaintiffs have established that each of them has standing to assert claims against OEA, which has acted uniformly as to all class members. Contrary to OEA's argument, "typicality is not absent merely because the named plaintiff does not share the same benefit plan with all putative class members." Moore's Federal Practice 3d, Vol. 5, Sec. 23.24 (2008). Rather, "once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants." *Senter v. General Motors Corp.*, 532 F.2d 511, 517 (6th Cir. 1976). "Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure. *See Cooper v. University of Texas at Dallas*, 482 F. Supp. 187 (N.D. Tex. 1979); Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 2.05 (3d ed. 1992)." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (In the analogous ERISA context, once a class representative established individual standing to sue under one ERISA Plan, he did not need standing to sue the Plans of other class members.)

Although the typicality requirement is not satisfied "when a plaintiff can prove his own

claim but not necessarily have proved anybody's else's *(sic)* claim . . . a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (internal citations omitted).

The Court concludes that Plaintiffs' claims arise from the same conduct of OEA that gives rise to the claims of class members and are based on the same legal theories. Plaintiffs' claims are therefore typical of those of the proposed class, as organized into subclasses of retired PSU and OASU members.

*Adequacy*

Under Rule 23(a)(4), a class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *American Medical Sys.*, 75 F.3d at 1083. The Sixth Circuit articulated two criteria for measuring adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* (citing *Senter*, 532 F.2d at 525; *Falcon*, 457 U.S. at 157 n.13 ("adequacy of representation requirement . . . also raises concerns about the competency of class counsel and conflicts of interest")). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id.* The adequacy of representation requirement is usually satisfied if the commonality and typicality requirements are met. *Dalesandro v. International Paper Co.*, 214 F.R.D. 473, 483 (S.D. Ohio 2003) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.

-12-

20 (1997)).

OEA disputes that the class representative Plaintiffs satisfy the adequacy requirement due to "insurmountable conflicts between class counsel and absent class members." (Def.'s Memo. in Opp. at 29.) The Court recognizes that "because named class members must act through class counsel, adequacy of representation turns in part on 'the competency of class counsel' and in part on the absence of 'conflicts of interest.' *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982); see Fed. R. Civ. P. 23(g)(1)(C)." *UAW v. GMC*, 497 F.3d 615, 626 (6th Cir. 2007).

Impermissible conflicts arise between the class representatives and absent class members where the named plaintiffs are "antagonistic" towards the interests of the class. *See Beattie*, 511 F.3d at 563. The supposed conflicts raised by OEA relate primarily to the involvement of third parties such as CORE, PSU, and the National Staff Organization, in funding and allegedly controlling the lawsuit. There is no question that third parties, including labor unions, may contribute to the costs of a class action without creating an impermissible conflict of interest. *See McClendon v. The Continental Group*, 113 F.R.D. 39, 43 (D.N.J. 1986); *UAW*, 497 F.3d at 625-28; *Bailey v. AK Steel Corp.,* 2008 U.S. Dist. LEXIS 5751, *21-22 (S.D. Ohio, Jan. 14, 2008).

Plaintiffs do not deny seeking assistance from PSU and NSO, and OEA retirees formed the group called "CORE" for the purpose of pursuing this lawsuit. (Pls' Reply, Doc. #44, at 1-2.) OEA has not presented evidence of any actual conflict between the unions or CORE and the class, between class representatives and prospective class members, between the proposed subclasses, or between the class and the proposed class counsel. There is likewise no evidence

-13-

that the representative Plaintiffs and their chosen attorneys have been unable to make strategic decisions, or that their control of the litigation has been compromised by the involvement of third parties.

Internal, minor differences in the status and alleged injuries of class members do not bar class certification. Instead, "class representatives are adequate when it 'appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel,' *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976), which usually will be the case if the representatives are 'part of the class and possess the same interest and suffer the same injury as the class members,' *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977)." *UAW*, 497 F.3d at 626.

Plaintiffs have demonstrated that they understand their role in this litigation and their responsibility to the class members. *See* Pls' Declarations. They have each demonstrated willingness to participate actively in the litigation and to protect the interests of the unnamed class members. The Court concludes that the five named Plaintiffs will fairly and adequately protect the interests of the class and subclasses, such that the Rule 23(a)(4) requirement of adequacy is satisfied.

### B.   Federal Civil Procedure Rules 23(b)(1) and (b)(2)

Having found that the proposed class satisfies the prerequisites of Rule 23(a), the Court will consider whether Plaintiffs' claims fall within one of the three class action categories under Rule 23(b). Plaintiffs assert that this action can be maintained under either 23(b)(1) or (2), both of which primarily concern actions for equitable relief.

Plaintiffs' Amended Complaint alleges that OEA has acted uniformly with respect to the

class, and seeks relief in the form of a declaration that each class member is vested in the benefits provided by the contract under which they retired. Plaintiffs also seek injunctive relief compelling OEA to reinstate benefits under the terms of the PSU and OASU CBAs.

The Court finds that class certification is appropriate under Rule 23(b)(2). OEA acted uniformly with respect to all retirees by terminating certain health-care benefits, as communicated in the form letter dated March 1, 2004. Whether Plaintiffs were vested in the retiree benefits extended by the CBAs is a shared issue of law that can be resolved through declaratory relief applicable to the entire class. OEA has therefore acted "on grounds that apply generally to the class" and "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs' request for incidental money damages does not prevent certification of this case as a class action under Rule 23(b)(2). *See Day v. NLO*, 851 F. Supp. 869, 886-87 (S.D. Ohio 1994). The primary relief Plaintiffs seek is in the form of a declaratory judgment that OEA must provide certain health-care benefits. This case essentially involves issues that can be resolved by declaratory relief. Any monetary damages are purely incidental and may be awarded only if Plaintiffs prevail on their request for injunctive and declaratory relief.

### C. Adequacy of Representation

With respect to the adequacy of legal representation, Plaintiffs are ably counseled by their attorneys, who are prepared to protect the interests of the class representatives and the class as a whole. OEA has not challenged Plaintiffs' attorneys' willingness or ability to represent the class,

-15-

and the Court finds no basis in the record to support such a finding.[3] *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (acknowledging that Rule 23 requires independent evaluation of class counsel, separate from the analysis of the adequacy of the class representative). Under Rule 23(g), the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. . . ." Fed. R. Civ. P. 23(g)(1)(B).

With these factors in mind, the Court finds that class counsel can fairly and adequately represent the interests of the class. Plaintiffs' counsel have worked diligently to identify and investigate the potential claims in this matter. They have shown an eagerness to prosecute the case, which has already involved time-consuming discovery, extensive briefing, and a successful appeal. This Court also notes that both parties have exhibited an exemplary knowledge of the law, and have capably briefed the matters before the Court. Pursuant to Rule 23(g), the Court hereby appoints David M. Cook and Cook, Portune & Logothetis as lead counsel for the class.

---

[3] The appointment of class counsel is a separate consideration, although it has traditionally been considered as an element of the adequacy inquiry under Rule 23(a)(4). The enactment of Rule 23(g), however, requires the Court to approve and appoint class counsel under a more specific inquiry.

**V.**

For the foregoing reasons, Plaintiff's Motion to Substitute Party (Doc. #92) is

**GRANTED**; Plaintiff's Motion for Leave to File First Amended Complaint (Doc. #93) is

**GRANTED**; and Plaintiff's Motion for Class Certification (Doc. #15) is **GRANTED**.

Under Federal Rule of Civil Procedure 23 subsections (a), (b)(2), and (c)(5), the Court

hereby certifies the following subclasses:

A)    All retired employees of the Ohio Education Association, together with their spouses and dependents, who retired from positions in the Professional Staff Union bargaining units under the terms of collective bargaining agreements between the OEA and that Union, whose retiree benefits have been terminated by OEA or whose retiree benefits will be terminated by OEA upon the attainment of age 65.

B)    All retired employees of the Ohio Education Association, together with their spouses and dependents, who retired from positions in the Ohio Association Staff Union bargaining units under the terms of collective bargaining agreements between the OEA and that Union, whose retiree benefits have been terminated by OEA or whose retiree benefits will be terminated by OEA upon the attainment of age 65.

**IT IS SO ORDERED.**

6-26-2008
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**